The petition set forth that on the 28th of August, 1945, plaintiff's wife, as agent of the community existing between her and plaintiff, purchased an automobile from defendant for a cash consideration of $800 and a chattel mortgage installment note in the sum of $668.88, and that on the day of such sale the maximum price of the automobile sold as fixed by the Price Administrator under the authority of Emergency Price Control Act of U.S. Congress, 50 U.S.C.A. Appendix, § 901 et seq., was $1092; that, consequently, there was an overcharge in the sale in the sum of $376.88.
In accordance with the Federal act, plaintiff prayed for judgment for a sum three times this overcharge, together with attorney's fees and costs.
The answer denied the marital relationship and the authorization of Mrs. Foster to make the purchase on behalf of the community. Sale of the car to Mrs. Foster was admitted, but defendant denied all allegations of overcharge.
The District Court gave judgment for defendant and plaintiff has appealed.
[1] The evidence discloses that plaintiff, C.H. Foster, was in the Armed Forces in 1945 and on the date the car was purchased was on Okinawa. Plaintiff introduced in evidence letters from himself to his wife, one before the purchase authorizing same and another afterwards approving the purchase. The authorization was included in a personal letter from plaintiff to his wife and contained the statement: "If you see a car you think it is a good buy then you go right ahead and buy it * * * for your decision is mine too." And again, "If you find a car that you like, then please buy it, and don't consult anyone on its appearance or the durability of its motor." Therefore, we conclude that plaintiff's wife was authorized to purchase the car on behalf of the community and that plaintiff had the right to bring the suit for recovery of the alleged excess purchase price, penalties and attorney's fees.
On the trial of the case, defendant admitted the sale and delivery of the car to Mrs. Foster and testified personally that the amount of $515 cash payment set forth in the notarial act of sale represented the actual cash consideration which was paid by Mrs. Foster and denied that a larger sum was delivered. His testimony was corroborated to some extent by that of E.J. Ryland, from whom he rented the lot on which his cars were displayed. He stated that he made out the papers based on the OPA ceiling price and while he testified that he heard the defendant say "five hundred dollars" at the time the money was paid, he did not count the money himself or observe the bills as they were counted.
The other witness to the transaction stated that Mrs. Foster was not in the office at the time he "witnessed the paper." With reference to the amount of money which passed, he stated that "the only thing I know was the money was still on the desk and the contract was there and they must *Page 674 
have just closed the deal." When questioned as to the amount of money that was on the desk, he stated that as much as he could see it was "around $500.00 or a little over." When asked if he counted it, he said he did not, but remarked that hundred dollar bills were easy to count. This witness was a former employee of defendant but not working for him at the time of the transaction. His testimony adds little to the case since he made no actual count of the money and his testimony about the amount was not clean-cut. In addition, there is no way of knowing whether defendant had picked up some of the money Mrs. Foster paid him before Mike Lewis came in to "witness the paper."
Mrs. Foster testified that she made an $800 cash payment at the time the papers were passed and gave the note for the balance plus carrying charges. Included in the payment were six one hundred dollar bills, the rest being in twenties and tens. In order to close the purchase and make this payment, she testified that she drew $635 from her bank account and cashed a government check for $165 and had $10 on hand out of her current wages from the Western Union Telegraph Company, where she had worked in Shreveport for the past four years. Mr. Dewey Williams, Mrs. Foster's stepfather, testified that he went to the bank with Mrs. Foster to draw the money from her account and also to help her cash the check, and that he saw the money counted out to Mrs. Foster, and that he saw her count out the $800 on the desk in front of Mr. Maniscalco, who picked up the money after it was counted out.
Mrs. Foster admitted signing the act of sale showing only $515 as the cash payment and a form "purchaser's statement" setting forth that no payment of money was made not shown on the certificate of transfer. But when questioned about everything being satisfactory at the time of the sale and delivery, she said, "Well, it had to be," and again, "I couldn't get the car any other way."
The purchaser's statement also negated five other common violations of the OPA regulations, and, in addition to Mrs. Foster's signature, showed the signatures of E.J. Ryland and Mike Lewis as witnesses and H.S. Henderson as notary.
This document adds little to defendant's case. When honest, straightforward sales are made, the seller does not usually require the purchaser to sign a statement that no one of some six devices for overcharge were employed against the vendee.
Mrs. Foster testified that neither witness Lewis or notary Henderson was present. Lewis, on the stand, verified her statement by testifying that he signed after she was gone. The notary was not introduced as a witness by defendant and we conclude that Mrs. Foster was correct as to his absence at the time she signed.
[2] After our examination of the testimony, we believe that the plaintiff has made out his case as to the payment of the $800 in cash by Mrs. Foster, and that the difference between the $515 cash payment shown on the act of sale and the $800 actually paid was in excess of the price fixed by the Office of Price Administration.
For the reasons assigned, judgment appealed from is set aside and judgment is now rendered in favor of plaintiff and against defendant in the sum of $855 as being the amount of the overpayment with penalties, and for an additional $175 for attorney's fees. Defendant to pay all costs.
 On Application for Rehearing.