Plaintiff filed this suit under the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., for the return of $447.00 excess over the maximum legal price paid to defendants for a 1940 Ford automobile. He also prayed for triple penalties and for $200.00 attorney's fees.
The answer admitted the sale of the 1940 Ford automobile and set forth that the price was the legal maximum of $796.00, represented by $100.00 cash and a trade-in allowance of $866.00 on a 1940 Chrysler automobile, $700.00 of this $866.00 being used to pay a note held by the finance company and the balance of $166.00 being applied on the purchase price of the Ford; the remaining $530.00 of the purchase price being financed by plaintiff with a finance company.
The answer further set forth that a few days before the sale of the Ford automobile they had sold this Chrysler automobile to plaintiff; had received in part payment the check for $613.00 which was not paid when presented to the bank upon which it was drawn and that subsequent to the presentation of this check, plaintiff issued a new check for the same amount and that this new check and the amount it represented "pertained to and was the result of the sale of the 1940 Chrysler automobile and formed no part of the consideration involved for the Ford sale; that each were distinct, independent and separate transactions."
The District Court rendered judgment in favor of the plaintiff for the $447.00 alleged to have been overpaid and for $75.00 attorney's fees. *Page 145 
The defendants filed a motion for a new trial on the ground that the judgment was contrary to the law and evidence. The plaintiff filed a motion for a rehearing on the ground that he was entitled to the penalties as provided by law. Both motions were overruled. Defendants appealed. Plaintiff answered, asking that the judgment of $447.00 be tripled and that the amount allowed for attorney's fees be increased from $75.00 to $250.00.
The record establishes the following facts. On March 29, 1946, plaintiff purchased from the Nichols Motor Company a 1940 Chrysler for $1313.00 (including $13.00 sales tax). He gave them his check for $03.00 and financed $700.00 through fifteen monthly payments. After experiencing continued mechanical difficulties with the car, he and a friend, Thomas Pierce, drove down from their home in Bastrop, Louisiana, to Monroe for the purpose of returning the Chrysler to Nichols Motor Company. It was necessary to drive the Chrysler from Bastrop to Monroe in low gear and the Nichols Motor Company requested that the car be left at the Olcott-Stone garage.
Plaintiff had stopped payment on the $613.00 check given as the cash portion of the purchase price and defendants agreed to the recission of the sale provided he would pay whatever charges the Commercial Securities Company, Inc., demanded for a cancellation of the installment contract. Settlement with the Commercial Securities Company was effected by plaintiffs payment to them of $25.00 as shown by a receipt in the record, and defendants' return of the $700.00 they had received for plaintiff's note.
After the settlement had been made by the Commercial Securities Company, plaintiff's companion, Thomas Pierce, went to the bus station and purchased two tickets to take plaintiff and himself back to Bastrop.
Plaintiff returned to the Nichols Motor Company to secure the return of his check for $613.00 upon which he had instructed his bank to stop payment. It happened that the defendant, Curtis Nichols, was away from his place of business and while waiting for Nichols' return, plaintiff noticed a lady drive a 1940 Ford automobile onto defendants' secondhand lot and made inquiry concerning its sale. He was informed that they had allowed $1250.00 for the Ford on a trade-in. Plaintiff, after trying the Ford out, agreed to purchase it for $1243.00, represented by a new check for $613.00, a postdated check in 'the sum of $75.00, $25.00 in cash and a credit balance of $530.00 financed through the Commercial Securities Company.
[1] The bill of sale on the Ford automobile is dated April 10, 1946, and shows a "previous deposit" of $796.00, cash $100.00, equity on 1940 Chrysler $166.00, and a balance of $530.00 payable in fifteen monthly payments. Apparently in an effort to dissociate the Ford sale in time from the return of the Chrysler, the defendants typed out the $613.00 check for plaintiff to sign showing a date of April 16, 1946, instead of April 10th, the day on which the sale was made. However, all of the facts and circumstances support the District Court's finding that the actual consideration for the Ford automobile was the $613.00 check, the $75.00 check, $25.00 in cash and $530.00 financed through the Commercial Securities Company. We therefore conclude that plaintiff paid $1243.00 for the 1940 Ford automobile, $447.00 of which was over and above the maximum price fixed by regulations under the Emergency Price Control Act of 1942.
[2] The learned District Judge declined to allow double or triple penalties for the reason that plaintiff was aware of what was being done in the whole transaction. There is no provision in the Act freeing a used car dealer from liability when the overcharge is known to the purchaser and where the overcharge has been established, this Court has uniformly assessed the penalties provided in the Act. McKellar v. Sapaugh Motor Co. et al., La. App., 31 So.2d 233. Foster v. Tony Maniscalco, La. App., 34 So.2d 672.
[3] For the reasons assigned, the judgment appealed from is amended by increasing the award of $447.00 to $1341.00 and by increasing the award for attorney's fees to $200.00, and, as amended, it is affirmed, with costs. *Page 146